Entered on Docket
November 13, 2012
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

FILED

NOV 06 2012

SUSAN M SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No. NC-11-1683-HPaMk |
| ROBERT YATES JACKSON, | Bk. No. 11-52517 |
| Debtor. | |
| ROBERT YATES JACKSON, | |
| Appellant, | |
| v. | M E M O R A N D U M[1] |
| AUDREY BARRIS, Chapter 7 Trustee; United States Trustee; Ronald C. Johnston, | |
| Appellees. | |

Argued and Submitted on October 18, 2012
at San Francisco, California

Filed - November 6, 2012

Appeal from the United States Bankruptcy Court
for the Northern District of California

Honorable Stephen L. Johnson, Bankruptcy Judge, Presiding

Appearances:  Melbourne Brady Weddle, Esq. argued for Appellant Robert Yates Jackson; Cameron M. Gulden, Esq. of U.S. Department of Justice, argued for Appellee United States Trustee.

Before: HOLLOWELL, PAPPAS, and MARKELL, Bankruptcy Judges.

---

[1] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

Robert Jackson (the Debtor) challenges the conversion of his chapter 11[2] bankruptcy case to chapter 7. We AFFIRM.

## I. FACTS

The Debtor filed a chapter 7 bankruptcy petition on March 16, 2011. The Debtor's attorney at the time was Christopher Jackson. According to the Debtor's bankruptcy schedules, his primary asset is a four-unit apartment complex (the Property); he lives in one unit and rents the others. The Property is encumbered by six secured notes.

On April 27, 2011, creditor Ronald Johnston (Johnston), the holder of a second deed of trust on the Property, filed a motion for relief from stay in order to foreclose. The motion was unopposed and the bankruptcy court granted the motion for stay relief on May 17, 2011 (the MRS).

On May 30, 2011, the Debtor, represented by a new attorney, Judson Farley (Farley), filed a motion to convert the case to chapter 11. On June 1, 2011, the bankruptcy court granted the motion to convert (June Conversion Order). In the June Conversion Order, the bankruptcy court set the deadline for filing a plan of reorganization as August 1, 2011, and the deadline for plan confirmation as October 6, 2011. The June Conversion Order also directed the Debtor to keep current on monthly operating reports and to fully cooperate with the United States Trustee (the UST). Finally, the June Conversion Order

---

[2] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532. "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

-2-

notified the Debtor that a failure to abide by any of the deadlines or directives set by the bankruptcy court could result in a dismissal or conversion of the case sua sponte. The first status conference was set for August 22, 2011.

On May 30, 2011, the Debtor filed an adversary proceeding to enjoin Johnston from conducting a sale of the Property so that, as part of his reorganization, the Debtor could attempt to strip the junior liens on the Property and retain his residence (the Adversary Proceeding). Adv. Pro. No. 11-05170. Farley filed an employment application on June 23, 2011.

On July 21, 2011, the UST filed a motion to convert the Debtor's bankruptcy case to chapter 7 or dismiss the case on the basis that the Debtor had failed to timely provide documents and amendments to the schedules requested by the UST and to file his monthly operating reports (Motion to Convert/Dismiss). The UST asserted that it had twice requested documents and amendments showing corporate ownership, tenant deposits and rental income from the Property, creditor payments, as well as proof that the Debtor had closed prepetition bank accounts and opened debtor-in-possession accounts. The UST stated that she had given the Debtor until June 29, 2011, to provide the documents and file the amendments, but the Debtor failed to do so. The UST asserted that without the documents and information, she could not determine the Debtor's financial affairs. Accordingly, the UST contended cause existed under § 1112(b)(4)(H) to convert or dismiss the case.

On August 1, 2011, the Debtor filed a chapter 11 plan of reorganization and disclosure statement, but did not serve notice

of the disclosure statement. On August 19, 2011, the Debtor filed operating reports for June and July. The Debtor's attorney also filed a declaration in opposition to the Motion to Convert/Dismiss, which explained why the June operating report was late-filed and stated that he had met the other requirements in the June Conversion Order because he had filed a plan and disclosure statement.

On August 22, 2011, the bankruptcy court erroneously entered an order converting the case to chapter 7. That order was vacated on August 23. Also on August 22, 2011, the bankruptcy court held the status conference along with the hearing on the Motion to Convert/Dismiss. At the hearing, the bankruptcy court denied Farley's employment application and removed Farley from the case. The bankruptcy court found that Farley was ineffective and that no progress was being made in the case. The bankruptcy court decided to continue the hearing so that the Debtor could find another attorney, and if the Debtor declined to do so, that it would likely convert the case and allow a chapter 7 bankruptcy trustee to deal with the Adversary Proceeding.

On August 28, 2011, based on its oral ruling at the August 22 hearing, the bankruptcy court issued an Order To Continue Status Conference and Motion to Convert or Dismiss Case to October 6, 2011 (Continuance Order). The Continuance Order directed the UST to file a statement by October 4, 2011, informing the bankruptcy court whether the Debtor was in compliance with the UST's requests for documentation. The Continuance Order also kept the confirmation deadline of October 6, 2011, in place "subject to extension at the hearing

-4-

Case: 11-52517   Doc# 139   Filed: 11/06/12   Entered: 11/13/12 17:33:45   Page 4 of 16

only if Debtor has new counsel and said counsel has been employed by October 6, 2011." Furthermore, the Continuance Order required the Debtor to file timely monthly operating reports and warned that the "failure to do so may result in the dismissal or conversion of this case by the court without further notice."

On September 29, 2011, Melbourne B. Weddle (Weddle) filed an Application for Appointment of Substitute Counsel (Employment Application). The Employment Application was not filed in the main bankruptcy case, but in another adversary proceeding related to the case. The bankruptcy court denied the Employment Application on October 3, 2011, because it failed to comply with Rule 2014(a). The bankruptcy court found that the Employment Application (1) was not filed in the bankruptcy case; (2) did not identify the scope of Weddle's representation; (3) did not sufficiently disclose Weddle's connections to the Debtor and his creditors; and (4) did not disclose Weddle's compensation arrangements.

On October 4, 2011, the UST filed its supplemental statement as required by the Continuance Order. The UST stated that the Debtor still had not filed amendments to his bankruptcy schedules or provided the required information regarding corporate ownership, tenant deposits and rental income related to the Property, lawsuits, and bank accounts. Furthermore, the UST reported that the monthly operating report for August had not been filed. Finally, the UST noted that the Debtor had not obtained a new attorney.

On October 5, 2011, the bankruptcy court converted the case to chapter 7 (Final Conversion Order). According to the

bankruptcy court, the Debtor had failed to comply with the Continuance Order because he had not provided the documentation requested by the UST, had not been successful in employing a new attorney or confirming a plan by the October 6, 2011 deadline, and had not timely filed his monthly operating reports.

On October 17, 2011, the Debtor filed a motion to alter or amend the "Order Denying Application for Appointment of Counsel and Converting Debtor's Case" to prevent manifest injustice (Reconsideration Motion). The Debtor requested that the bankruptcy court (1) permit Weddle to act as interim general counsel for the Debtor and special counsel to the Debtor in the Adversary Proceeding and other adversary proceedings contemplated in the case; (2) grant Weddle additional time to obtain permanent bankruptcy counsel; and (3) vacate the MRS order until the Debtor could obtain an attorney.

The Debtor contended that he had been deprived of due process because of his inability to be represented by counsel. In a declaration, Weddle asserted that there was new evidence as to why the Employment Application was insufficient. The "new evidence" was Weddle's explanation that he was unable to obtain information from Farley regarding the basis of Farley's removal in the limited time available, which he contended resulted in the incomplete employment application. The Reconsideration Motion, however, did not assert that the bankruptcy court converted the case without cause or had denied the Debtor procedural due process in the conversion of the case. Indeed, the Reconsideration Motion did not assign any error by the bankruptcy court in converting the Debtor's case. The Debtor did not seek

-6-

the alteration or amendment of the Final Conversion Order in his requested relief.

A hearing on the Reconsideration Motion was held on November 9, 2011. At the hearing, the bankruptcy court summarized the events in the case and reiterated that its decision to convert the case was based on the fact that it was not making progress and the Debtor was not in compliance with his duties under the Bankruptcy Code. The bankruptcy court noted that the Employment Application was defective because it was not filed in the main case and was insufficient. The bankruptcy court stated that "whether you were employed or not, this case was being converted back to a 7 because it wasn't making any progress." Hr'g Tr. (Nov. 9, 2011) at 6:14-16. After Weddle argued that the Debtor wanted to remain in chapter 11 in order to reorganize by stripping off the junior deeds of trust on the four-plex, the bankruptcy court stated that it would take the Debtor's Reconsideration Motion under advisement. The bankruptcy court noted that the Debtor "is in a difficult spot, but Chapter 11 is very challenging, and this case, like so many others, unfortunately isn't making appropriate progress." Id. at 8:10-13.

The bankruptcy court denied the Reconsideration Motion by written order on November 15, 2011. The bankruptcy court determined that the Debtor did not provide any basis under Fed. R. Civ. P. 60(b) to reconsider its order denying the Employment Application. It reiterated that it "denied the [Employment] Application filed by Mr. Weddle because it did not satisfy the disclosure requirements and was filed in the wrong

-7-

Case: 11-52517  Doc# 139  Filed: 11/06/12  Entered: 11/13/12 17:33:45  Page 7 of 16

proceeding. . . . The denial was without prejudice to a further application that was proper."

Furthermore, to the extent that the bankruptcy court understood the Reconsideration Motion as a request to vacate the Final Conversion Order, it again found that there was no basis under Fed. R. Civ. P. 60(b) to do so since the Debtor failed to carry out the obligations set forth in the Continuance Order and failed to fulfil his obligations under the Bankruptcy Code: "The U.S. Trustee's motion was well-grounded. Nothing in the [Reconsideration] Motion changes these facts." Finally, the bankruptcy court noted that the MRS had been granted back in May 2011, and no reason was given as to why the MRS was erroneously entered or why reconsideration was warranted. The Debtor timely appealed.

## II. JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. § 1334 and 157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158 below.

## III. ISSUE

Did the bankruptcy court abuse its discretion in denying the Reconsideration Motion or in converting the bankruptcy case?

## IV. STANDARDS OF REVIEW

The bankruptcy court's decision to convert a chapter 11 case to chapter 7 is reviewed for an abuse of discretion. Pioneer Liquidating Corp. v. U.S. Trustee (In re Consol. Pioneer Mortg. Entities), 264 F.3d 803, 806 (9th Cir. 2001); Johnston v. JEM Dev. Co. (In re Johnston), 149 B.R. 158, 160 (9th Cir. BAP 1992). Additionally, the bankruptcy court's denial of a motion for

Case: 11-52517   Doc# 139   Filed: 11/06/12   Entered: 11/13/12 17:33:45   Page 8 of 16

reconsideration is reviewed for an abuse of discretion. <u>Arrow Elec., Inc. v. Justus (In re Kaypro)</u>, 218 F.3d 1070, 1073 (9th Cir. 2000); <u>Sewell v. MGF Funding, Inc. (In re Sewell)</u>, 345 B.R. 174, 178 (9th Cir. BAP 2006).

A bankruptcy court abuses its discretion if it bases a decision on an incorrect legal rule, or if its application of the law was illogical, implausible, or without support in inferences that may be drawn from the facts in the record. <u>United States v. Hinkson</u>, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc); <u>Ellsworth v. Lifescape Med. Assocs., P.C. (In re Ellsworth)</u>, 455 B.R. 904, 914 (9th Cir. BAP 2011).

## V. DISCUSSION

At the outset, we address what issues are subject to review in this appeal. The order from which the appeal is taken is the order denying the Reconsideration Motion. The Reconsideration Motion's caption reads: "Motion to Alter or Amend Judgment (Order) Re Employment of Counsel." Underneath, is a second title: "Motion of the Debtor Robert Yates Jackson to Alter or Amend Orders Denying Debtor His Right to Substitute Counsel After Court Has Discharged Counsel And Converting Case From a Chapter 11 to a Chapter 7 Case." In the text of the Reconsideration Motion, the Debtor argued that he was denied due process to have counsel represent him in any current or future adversary proceeding, but did not mention representation with respect to conversion. Other than the Reconsideration Motion's second title, it does not make any reference to the Final Conversion Order.

-9-

In his appellate briefs, the Debtor assigns no error at all to the bankruptcy court's denial of the Reconsideration Motion. Instead, the Debtor's appellate briefs assign errors by the bankruptcy court in converting the case to chapter 7. The Debtor contends that the "only issue presented to the panel is whether the bankruptcy court correctly afforded [the Debtor] the full procedural protections provided by law [under § 1112(b)] before the bankruptcy court effected its conversion." Reply at 3. Thus, the Debtor argues that the bankruptcy court (1) failed to comply with § 1112(b) and statutory due process by converting the case sua sponte without a hearing or notice to the Debtor, (2) did not make a finding that there was cause to convert or dismiss the case under § 1112(b); and (3) did not balance whether conversion or dismissal was in the best interests of the creditors. However, none of the § 1112(b) arguments were made to the bankruptcy court. Consequently, they are waived on appeal. Campbell v. Verizon Wireless S-CA (In re Campbell), 336 B.R. 430, 434 n.6 (9th Cir. BAP 2005) citing O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.), 887 F.2d 955, 957 (9th Cir. 1989) ("The rule in this circuit is that appellate courts will not consider arguments that are not 'properly raise[d] in the trial courts.").

Nevertheless, we have an independent duty to review de novo whether the Debtor was given due process before the Final Conversion Order was entered. Owens-Corning Fiberglas Corp. v. Ctr. Wholesale, Inc. (In re Ctr. Wholesale, Inc.), 759 F.2d 1440, 1448 (9th Cir. 1985) (an order is void or unenforceable against a party if it was entered or obtained without due process); GMAC

-10-

Mortg. Corp. v. Salisbury (In re Loloee), 241 B.R. 655, 661 (9th Cir. BAP 1999).

Section 1112(b)(1) provides that only "on request of a party in interest, and after notice and a hearing" may a case be converted or dismissed. Similarly, a sua sponte conversion or dismissal can only be ordered after notice and an opportunity to be heard. In re Bijelonic, 2012 WL 2263289, *5 (C.D. Cal. June 15, 2012). The Bankruptcy Code provides some guidance as to the appropriate requirements:

> (1) "after notice and a hearing", or a similar phrase —
>    (A) means after such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances; but
>
>    (B) authorizes an act without an actual hearing if such notice is given properly and if —
>
>       (I) such a hearing is not requested timely by a party in interest; or
>
>       (ii) there is insufficient time for a hearing to be commenced before such act must be done, and the court authorizes such act[.]

11 U.S.C. § 102(1).

Adequate notice and adequate opportunity for hearing is a flexible concept that depends on the circumstances of the particular case. Tennant v. Rojas (In re Tennant), 318 B.R. 860, 870-71 (9th Cir. BAP 2004). As the Supreme Court ruled:

> An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and to afford them an opportunity to present their objections. The notice must be of such nature as reasonably to convey the required information and it must afford a reasonable time for those interested to make their appearance.

Case: 11-52517   Doc# 139   Filed: 11/06/12   Entered: 11/13/12 17:33:45   Page 11 of 16

Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950) (citations omitted). In other words, we must determine whether the notice given to the Debtor was "reasonably calculated" to give him a meaningful opportunity to oppose the conversion if he so desired. We conclude that it was.

    The Debtor was provided notice, as early as the entry of the June Conversion Order, that a failure to comply with certain deadlines or cooperate with the UST could result in a sua sponte conversion or dismissal of the case. Additionally, through the Motion to Convert/Dismiss, the Debtor was notified that conversion or dismissal would be pursued unless he provided certain information to the UST. Although the Debtor had paid an attorney to represent him in the case at that time, and the attorney appeared at the August 22 hearing on the Motion to Convert/Dismiss on his behalf, the attorney was not approved by the bankruptcy court due to the bankruptcy court's concern that counsel was ineffective. At that hearing, the bankruptcy court alerted the Debtor to its concern that the case was not progressing, that the Debtor was not complying with his duties under the Bankruptcy Code, and that he faced the possibility of conversion of his case back to a chapter 7.

    The Debtor also received, in late August 2011, notice of the Continuance Order, which notified the Debtor that failure to cure the deficiencies identified by the UST in the Motion to Convert/Dismiss, failure to timely file monthly operating reports, or failure to have a plan confirmed by October 6, 2011 (or at least have substitute counsel appointed by then), could result in the conversion or dismissal of the case sua sponte.

Accordingly, the Debtor received more than adequate notice that his case could be converted and he had more than adequate time in order to comply with the Continuance Order before any conversion was ordered by the bankruptcy court.[3]

While the Debtor asserts on appeal that a hearing was necessary under § 1112(b) before the bankruptcy court could convert or dismiss the case, we note that the bankruptcy court made clear on numerous occasions in notices sent to the Debtor or at hearings that it would consider conversion sua sponte if there was not compliance with its orders, most notably the Continuance Order. See also, 11 U.S.C. § 1112(b)(4)(E) (cause exists to convert or dismiss a case when a debtor fails to comply with an order of the court). In any event, a hearing on the Motion to Convert/Dismiss was held on August 22, 2011. Although the bankruptcy court converted the case the day before the continued hearing on the Motion to Convert/Dismiss was scheduled to be held, the continued hearing was unnecessary because the Debtor did not argue that conversion was unwarranted and could not demonstrate compliance with the Continuance Order. Therefore, even if the continued hearing had been held on October 6, it would not have altered the outcome. Under the circumstances, we conclude that the bankruptcy court provided the Debtor due process before it converted the Debtor's bankruptcy case.

---

[3] Although Weddle was not involved in the case prior to September 29, 2011, an examination of the bankruptcy court's docket or conversation with the UST would have notified him of what actions were required to avoid conversion or dismissal.

-13-

As we noted above, any argument that the bankruptcy court failed to make a finding that cause existed to convert the case, or that the bankruptcy court should have dismissed rather than converted the case, has been waived. Accordingly, we conclude that the bankruptcy court did not err in entering the Final Conversion Order.

## VI. CONCLUSION

For the foregoing reasons, we AFFIRM the orders of the bankruptcy court.

Case: 11-52517    Doc# 139    Filed: 11/06/12    Entered: 11/13/12 17:33:45    Page 14 of 16

# U.S. Bankruptcy Appellate Panel
# of the Ninth Circuit

125 South Grand Avenue, Pasadena, California 91105
Appeals from Central California (626) 229-7220
Appeals from all other Districts (626) 229-7225

## NOTICE OF ENTRY OF JUDGMENT

BAP No.: NC-11-1683-HPaMk

RE: ROBERT YATES JACKSON

A separate Judgment was entered in this case on **11/06/2012**.

**BILL OF COSTS:**

> Bankruptcy Rule 8014 provides that costs on appeal shall be taxed by the Clerk of the Bankruptcy Court. Cost bills should be filed with the Clerk of the Bankruptcy Court from which the appeal was taken. 9th Cir. BAP Rule 8014-1

**ISSUANCE OF THE MANDATE:**

> The mandate, a certified copy of the judgment sent to the Clerk of the Bankruptcy Court from which the appeal was taken, will be issued 7 days after the expiration of the time for filing a petition for rehearing unless such a petition is filed or the time is shortened or enlarged by order. See Federal Rule of Appellate Procedure 41.

**APPEAL TO COURT OF APPEALS:**

> An appeal to the Ninth Circuit Court of Appeals is initiated by filing a notice of appeal with the Clerk of this Panel. The Notice of Appeal should be accompanied by payment of the $455 filing fee and a copy of the order or decision on appeal. Checks may be made payable to the U.S. Court of Appeals for the Ninth Circuit. See Federal Rules of Appellate Procedure 6 and the corresponding Rules of the United States Court of Appeals for the Ninth Circuit for specific time requirements.

## CERTIFICATE OF MAILING

The undersigned, deputy clerk of the U.S. Bankruptcy Appellate Panel of the Ninth Circuit, hereby certifies that a copy of the document on which this certificate appears was transmitted this date to all parties of record to this appeal.

**By:** Freddie Brown, Deputy Clerk

**Date:** November 6, 2012